IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | |
|---|---|
| HAROLD S. FIELD,<br><br>   Plaintiff,<br><br>v.<br><br>ENVIRONMENTAL PROTECTION AGENCY,<br><br>   Defendant. | 2:19-CV-120-Z-BR |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION TO DISMISS**

Plaintiff, proceeding *pro se*, filed his Complaint (ECF No. 3) apparently seeking permanent injunctive relief against a sole defendant, the Environmental Protection Agency ("EPA"), to enjoin the enforcement of specific regulations and laws pertaining to emissions. On December 17, 2019, defendant filed a Motion to Dismiss (ECF No. 12). Plaintiff filed a Response to the Motion to Dismiss, along with several Motions to Proceed (ECF Nos. 15, 17, and 19). Defendant filed a Reply and Responses to plaintiff's Response and his motions (ECF Nos. 16, 18, and 20). The undersigned recommends plaintiff's complaint be dismissed without prejudice for lack of standing.

**I.   CASE BACKGROUND**

Plaintiff brings this action against the EPA to immediately stop enforcement of all "EPA rules, regulations and laws pertaining to emissions into the atmosphere which were enacted after January 1, 1990 and are not specifically to prevent human harm." (ECF No. 3, p. 3). Plaintiff asserts that the enforcement of these laws, specifically the laws enacted to limit the emissions of aerosols and greenhouse gases, is the cause of global warming. (ECF No. 5, p. 1–10). Plaintiff

asserts that the damages to all persons by global warming are accruing daily, and compensatory damages are not sought by his lawsuit. Rather, plaintiff solely seeks an order by this Court to stop enforcement by the EPA of any law enacted in 1990 or thereafter regarding "air restrictions" or emissions "not specifically [enacted] to prevent human harm." (ECF No. 3, p. 3–5).

Plaintiff does not assert any specific facts that describe how global warming affects his specific rights or interests. (ECF No. 3, p. 1–7; ECF No. 5, p. 1–10). Rather, plaintiff only states that the rise in temperatures will cease and temperatures will return to pre-1990 temperatures, global warming will stop, and "hopefully" the "weather patterns" will "change for the better" within a year's time if plaintiff's requested relief is granted. *Id*. Plaintiff does not limit his request to the enforcement of these regulations and laws in any particular area, but appears to request a nationwide ruling on this issue. *Id*.

The EPA filed its Motion to Dismiss asserting that plaintiff (1) did not properly effect service on the EPA; (2) lacks standing to bring these claims and thus this suit lacks subject matter jurisdiction; and (3) did not state any cognizable claims for relief.

## II.   DISCUSSION

Standard of Review

Federal courts are courts of limited jurisdiction. *See* U.S. CONST. ART. III, § 2, CL. 2. A federal district court only has the power to make decisions on the merits of a case when jurisdiction arises under the constitution and is conferred by Congress in a federal statute. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998). A plaintiff who sues in federal court has the burden to prove that the district court has jurisdiction over the alleged controversy. *Kokkonen*, 511 U.S. at 377. The basis for subject matter jurisdiction should affirmatively appear in the plaintiff's pleading in the

form "of a short and plain statement" asserting the court's jurisdiction. *See* FED. R. CIV. P. 8(a)(1).

However, allegations made in a complaint by a pro se plaintiff are liberally construed and held to a less stringent standard than those drafted by a lawyer. *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *see Perez v. United States*, 312 F.3d 191, 194–95 (5th Cir. 2002). "If a complaint fails to cite the statute conferring jurisdiction, the omission will not defeat jurisdiction if the facts alleged satisfy jurisdictional requirements." *Margin v. Sea–Land Serv., Inc.*, 812 F.2d 973, 976 (5th Cir. 1987) (citing *Hildebrand v. Honeywell, Inc.*, 622 F.2d 179, 181 (5th Cir. 1980)).

Federal Rule of Civil Procedure 12(b)(1) addresses a district court's ability to hear a case and make any determinations on the merits. *See* Fed. R. Civ. P. 12(b)(1). A district court's basis to dismiss for "[l]ack of subject matter jurisdiction may be found in any one of three instances: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Ramming*, 281 F.3d at 161 (citing *Barrera–Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1995)). Thus, a district court can look outside of the complaint to determine facts relevant to subject matter jurisdiction. *See Williams v. Wynee*, 533 F.3d 360, 365 n.2 (5th Cir. 2008); *Ramming*, 281 F.3d at 161. This Court will consider all of plaintiff's pleadings and filings to determine whether facts exist to support the Court's subject matter jurisdiction. *See Williams*, 533 F.3d at 365 n.2; *Ramming*, 281 F.3d at 16.

When assessing jurisdiction, the district court accepts the plaintiff's allegations in the complaint as true and may resolve undisputed facts. *See Choice Inc. of Texas v. Greenstein*, 691 F.3d 710, 714 (5th Cir. 2012). The plaintiff, as the party asserting jurisdiction, bears the burden of proof for establishing federal court jurisdiction. *Life Partners, Inc. v. United States*, 650 F.3d 1026, 1029 (5th Cir. 2011). In the end, a court should "dismiss for lack of subject matter jurisdiction …

3

only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief." *Choice Inc. of Texas*, 691 F.3d at 714 (quoting *Ramming*, 281 F.3d at 161). Without subject matter jurisdiction a district court can only decide that it does not have jurisdiction and nothing more. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93–95 (1998); *McDonal v. Abbott Laboratories*, 408 F.3d 177, 182 (5th Cir. 2005).

When a case is dismissed for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), the court need not address any challenges to the merits, such as a defendant's attack pursuant to Federal Rule of Civil Procedure 12(b)(6). *See Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). Thus, this Court will follow the Fifth Circuit's directive:

> When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits. (citations omitted). This requirement prevents a court without jurisdiction from prematurely dismissing a case with prejudice. The court's dismissal of a plaintiff's case because the plaintiff lacks subject matter jurisdiction is not a determination of the merits and does not prevent the plaintiff from pursuing a claim in a court that does have proper jurisdiction.

*Ramming*, 281 F.3d at 161 (citations omitted).

A plaintiff who files a complaint and seeks review of agency action "invok[es] federal jurisdiction" and therefore "bears the burden of establishing" standing. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992); *see also Massachusetts v. Envtl. Prot. Agency*, 549 U.S. 497, 517–18 (2007). To show standing, a plaintiff must show that he:

(1) suffered an injury in fact,

(2) that is fairly traceable to the challenged conduct of the defendant, *and*

(3) that is likely to be redressed by a favorable judicial decision.

*Gill v. Whitford*, ___ U.S. ___, 138 S. Ct. 1916, 1929 (2018) (emphasis added). The standing doctrine "is not just an empty formality" that a court can ignore when a case seems important.

*Lujan*, 504 U.S. at 581 (Kennedy, J., concurring in part and concurring in the judgment). The elements of standing go to the very core of judicial power. Without standing, a court has no authority to render a decision on the merits of a case. *See id*.

Federal courts are vested with the "judicial power" to resolve "cases" or "controversies." U.S. CONST. ART. III, § 2. When resolution of a case or controversy requires assessing the lawfulness of an executive regulation, courts do so. *See Utility Air Regulatory Grp. v. EPA*, 573 U.S. 302, 314–15 (2014). But when a plaintiff lacks standing, the resulting litigation cannot be fairly called "a case or controversy," *Ariz. Christian Sch. Tuition Org. v. Winn*, 563 U.S. 125, 132 (2011), and the court has no "power to declare the law." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) (quotations omitted). "For the federal courts to decide questions of law arising outside of cases and controversies would be inimical to the Constitution's democratic character." *Ariz. Christian Sch. Tuition Org*., 563 U.S. at 132. It would improperly transform courts into "roving commissions assigned to pass judgment on the validity of the Nation's laws" and agency actions. *Broadrick v. Oklahoma*, 413 U.S. 601, 610–11 (1973).

<u>Standing</u>

"[T]he first and foremost of standing's three elements" is injury in fact. *Spokeo, Inc. v. Robins*, ––– U.S. –––, 136 S. Ct. 1540, 1547 (2016). "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.' " *Id*. at 1548 (quoting *Lujan*, 504 U.S. at 560).

In environmental cases, courts must carefully distinguish between injury to the plaintiff and injury to the environment. Article III standing requires injury to the plaintiff. Injury to the environment is insufficient. *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,

5

528 U.S. 167, 181 (2000) ("The relevant showing for purposes of Article III standing, however, is not injury to the environment but injury to the plaintiff."). Here, the Court must determine if the plaintiff has alleged an injury to himself, or merely to the environment.

The question, then, is what does Article III require of the plaintiff who claims injury based on harm to the environment? Sometimes an individual's aesthetic, recreational, and scientific interests provide that link. *See Friends of the Earth*, 528 U.S. at 183 (explaining that lessening of "aesthetic and recreational values" is an injury in fact); *Lujan*, 504 U.S. at 562–63. But such environmental interests cannot support an injury in fact unless the plaintiff has been actually harmed or imminently will be. *See Spokeo*, 136 S. Ct. at 1548; *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013); *Lujan*, 504 U.S. at 564 n.2 ("Although imminence is concededly a somewhat elastic concept, it cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative for Article III purposes—that the injury is certainly impending." By ensuring a future injury is not "too speculative," the imminence requirement "reduce[s] the possibility of deciding a case in which no injury would have occurred at all." *Lujan*, 504 U.S. at 564 n.2.

Plaintiff must show that the actions of the defendant affect geographic areas where he has individual interests, and as plaintiff is seeking future, prospective relief, he must show he has upcoming individual interests in the affected geographic area. *See Summers v. Earth Island Inst.*, 555 U.S. 488, 499 (2009) ("[T]o establish standing plaintiffs must show that they use the area affected by the challenged activity..."; *Lujan*, 504 U.S. at 564–66 (holding that past visits to an affected area "prove[d] nothing" for standing purposes because "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief.")). Without a geographic and temporal nexus, plaintiff cannot suffer an injury in fact. *Lujan*, 504 U.S. at 564; *Summers*, 555 U.S. 499 (Article III standing cannot be supported by a tenuous connection to an

overly broad geographic area.). If the geographic area identified by plaintiff's complaint is broad, courts require that a plaintiff should rightfully demonstrate a "more specific geographic or other causative nexus" to establish standing. *See Sierra Club, Lone Star Chapter v. Cedar Point Oil Co.*, 73 F.3d 546, 558 (5th Cir. 1996).

Here, the plaintiff has failed to allege injury in fact sufficient to establish Article III standing. Plaintiff lists only the generalized concerns of temperature and adverse weather events that affect the general public and does not indicate any specific events that have affected his interests personally. Further, plaintiff's Complaint seeks to address global warming on a nationwide level (as the EPA is a national organization that oversees the enforcement of laws in the United States). The prospective relief sought by plaintiff, and the alleged injury, is not sufficiently particularized to establish standing.

In addition to injury in fact, plaintiff must also show traceability. Article III demands that there be "a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Lujan*, 504 U.S. at 560. Thus, plaintiff must show a causal connection between EPA's conduct in enforcing emissions laws and regulations enacted in 1990 and thereafter and the specific effects of global warming. To do so, plaintiff submitted attachments to his Complaint (ECF No. 5), purporting to be research showing the cause of global warming and the link to the enforcement actions of the EPA. The plaintiff in this case has not alleged procedural errors by the EPA (e.g. the failure to follow their own regulations in creating an impact statement), rather he complains of substantive law violations (e.g. the laws and regulations enforced are the cause of the problem, not the solution). As such, plaintiff must meet the more stringent traceability requirements for standing. *See League of United Latin Amer.*

*Citizens v. City of Boerne*, 659 F.3d 421, 431 (5th Cir. 2011).

Plaintiff alleges that the enforcement by the EPA of certain regulations and laws enacted after 1990 causes global warming. However, plaintiff's request to enjoin the enforcement of these laws and regulations does not consider the actions of all parties responsible for the emissions plaintiff seeks to deregulate. As such, plaintiff's proposed injunctive relief does not have the necessary causation to establish traceability and standing. *See Allen v. Wright*, 468 U.S. 737, 759 (1984) (noting that the chain of causation asserted by the plaintiffs is particularly weak where it involves numerous third parties). "The more attenuated or indirect the chain of causation between the [defendant's] conduct and the plaintiff's injury, the less likely the plaintiff will be able to establish a causal link sufficient for standing." However, a plaintiff can establish traceability in standing by showing that a defendant caused some portion of his actual injury. *See Pub. Interest Research Grp. of N.J., Inc. v. Powell Duffryn Terminals Inc.*, 913 F.2d 64, 72 n.8 (3d Cir. 1990)). Here, plaintiff's alleged injury (global warming) and his proposed injunctive relief (stopping enforcement by the EPA) does not show that the third-party actions of individuals against whom the EPA is enforcing the laws would then change their behavior regarding emissions. Thus, there is insufficient traceability between the plaintiff's alleged injury and the defendant's actions in enforcing the rules and regulations in question.

The Court recognizes that traceability is a fluid concept, based on a very fact specific analysis. For example, the Supreme Court found standing existed for the state of Massachusetts to challenge the EPA's lack of regulation of greenhouse gas emissions, based on the contribution to global warming caused by these gases. *See Massachusetts v. Envtl. Prot. Agency*, 549 U.S. 497, 517 (2007).[1] The Court emphasized "the special position and interest of Massachusetts," and

---

[1] The Court also notes that the science discussed in this case appears to directly contradict the assertions made by the pro se plaintiff in this case; however, the Court, for purposes of establishing standing, is accepting the allegations in plaintiff's

8

stated: "It is of considerable relevance that the party seeking review is a sovereign State, and not, as it was in *Lujan*, a private individual." *Id*. The Court noted that Massachusetts filed the lawsuit in its capacity of quasi-sovereign; thus, the Court determined that Massachusetts was entitled to "special solicitude" in its standing analysis. *Id*. at 520.

Here, the plaintiff's status as a private individual, alleging substantive not procedural error by an agency, combined with his lack of a particularized injury, lead this Court to determine that plaintiff cannot establish traceability of his alleged injury to the actions of the defendant.

The final element of standing is the redressability of plaintiff's injury through favorable action of the court. Plaintiff's requested relief is for this Court to enjoin the enforcement by the EPA of all laws regarding emissions enacted in 1990 or thereafter in order to cure his injury–global warming. Generalized complaints about an agency's failure to take appropriate measures concerning the environment do not meet the redressability threshold. *See Sierra Club v. Glickman*, 156 F.3d 606, 620 (5th Cir. 1998). Plaintiff's request to enjoin the EPA from enforcing laws and regulations relating to emissions is absolutely an attempt to seek "wholesale improvement of [the EPA's] program by court decree, rather than in the offices of [the EPA] or the halls of Congress, where programmatic improvements are normally made." *Sierra Club v. Peterson*, 228 F.3d 559, 566 (5th Cir. 2000) (quoting *Lujan*, 497 U.S. at 891).

Thus, plaintiff has failed to meet his burden to establish standing on any of the three elements required under *Lujan*. As such, this Court lacks jurisdiction over this lawsuit, and the Complaint must be dismissed.

Justiciability

" '[T]he concept of justiciability,' as embodied in the political question doctrine, 'expresses

---

complaint as true.

the jurisdictional limitations imposed upon federal courts by the case or controversy requirement of Art[icle] III.' " *Spectrum Stores, Inc. v. Citgo Petrol. Corp.*, 632 F.3d 938, 948 (5th Cir. 2011) (quoting *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 215 (1974)). "At its core, the political question doctrine, 'excludes from judicial review those controversies which revolve around policy choices and value determinations constitutionally committed for resolution to the halls of Congress or the confines of the Executive Branch.' " *Id.* at 949 (quoting *Japan Whaling Ass'n v. Amer. Cetacean Soc'y*, 478 U.S. 221, 230 (1986)). "The dominant consideration in any political question inquiry is whether there is a 'textually demonstrable constitutional commitment of the issue to a coordinate political department.' " *Id.* at 950 (quoting *Saldano v. O'Connell*, 322 F.3d 365, 369 (5th Cir. 2003)). The United States Supreme Court has held that application of any one of the following elements renders a claim non-justiciable:

> (1) a textually demonstrable constitutional commitment to a coordinate political department; or (2) a lack of judicially discoverable and manageable standards for resolving [the issue]; or (3) the impossibility of deciding without initial policy determination of a kind clearly for nonjudicial discretion; or (4) the impossibility of a court's undertaking independent resolution without expressing lack of respect to coordinate branches of the government; or (5) an unusual need for unquestioning adherence to a political decision already made; or (6) the potentiality for embarrassment from multifarious pronouncements by various departments on one question.

*Baker v. Carr*, 369 U.S. 186, 217 (1962). The Supreme Court later classified the *Baker* elements as "six independent tests" for determining the existence of a political question, and surmised that the tests are probably listed in "descending order of both importance and certainty." *Vieth v. Jubelirer*, 541 U.S. 267, 277–78 (2004).

> "The judicial power" created by Article III, § 1, of the Constitution is not whatever judges choose to do … or even whatever Congress chooses to assign them … It is the power to act in the manner traditional for English and American courts. One of the most obvious limitations imposed by that requirement is that judicial action must be governed by standard, by rule. Laws promulgated by the Legislative Branch can be inconsistent, illogical, and ad hoc; law pronounced by the courts

must be principled, rational, and based upon reasoned distinctions. *Id*. at 278. "[T]he potential for a clash between a federal court and other branches of the federal government is fundamental to the existence of a political question; a simple conflict between a federal court and state agencies does not implicate the doctrine." *Saldano*, 322 F.3d at 370 (quoting *Gordon v. Texas*, 153 F.3d 190, 194 (5th Cir. 1998)).

The Supreme Court held that the *Massachusetts* case did not present a political question. However, that case is distinguishable from the present lawsuit. The Supreme Court stated that it possessed neither the expertise nor the authority to evaluate the policy judgments that the EPA offered as justification for refusing to regulate motor-vehicle emissions, such as issues involving foreign relations. *Massachusetts*, 549 U.S. at 533. "[T]he first decider under the [Clean Air] Act is the expert administrative agency, the second, federal judges" which was "yet another reason to resist setting emissions standards by judicial decree under federal tort law." *Amer. Elec. Power Co. v. Connecticut*, ⎯⎯ U.S. ⎯⎯, 131 S.Ct. 2527, 2539 (2011).

Here, the plaintiff is clearly asking this Court to regulate (or deregulate) emissions or to make policy determinations concerning climate change. Once again, the plaintiff is not asking the Court to decide an issue regarding a procedural error by the EPA; rather, the plaintiff seeks a Court determination that the substantive laws enforced by the EPA and passed by Congress do not appropriately address global warming. Thus, plaintiff is asking this Court to decide a non-justiciable political question, which it cannot do.

<u>Service Issues</u>

After issuance of an order from the Court regarding plaintiff's duty to serve the defendants, the plaintiff personally mailed and served a copy of the Complaint to the United States Attorney's Office. Federal Rule of Civil Procedure 12(b)(5) allows a party to move for dismissal based on

11

improper service. The defendant in this case has done so. Defendant argues that plaintiff, who is a party to this lawsuit, directly mailed the Complaint to the U.S. Attorney's Office, in violation of Federal Rule of Civil Procedure 4(c)(2) (service by a party is not allowed). Plaintiff filed a Response to the Motion to Dismiss alleging proper service, but did not explain how he properly compiled with the Federal Rules of Civil Procedure. As such, the Court agrees that plaintiff's service of process is insufficient.

However, as the Court has determined that standing is lacking to pursue this lawsuit, the Court recommends dismissal on those grounds, and makes no determination whether plaintiff could make a showing of "good cause" to extend the 90 day deadline for service under the Rules.

### III.    CONCLUSION

Even when construed liberally, plaintiff's complaint fails to allege facts supporting his claim of standing to bring this lawsuit; thus, this Court lacks subject matter jurisdiction over plaintiff's lawsuit. As this Court lacks jurisdiction over the plaintiff's claims, the Court must dismiss this case without considering defendant EPA's request for dismissal under Federal Rule of Civil Procedure 12(b)(6). Plaintiff's motions to proceed (ECF Nos. 15, 17 and 19) are therefore also DENIED. Additionally, the Court also notes that service on the defendant was not properly completed, but makes no determination of good cause to extend the service period, as this Court lacks jurisdiction over this lawsuit in any case.

### IV.    RECOMMENDATION

For the above reasons, the Court recommends plaintiff's complaint (ECF No. 3) be dismissed without prejudice for lack of standing and jurisdiction.

### V.    INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of these Findings, Conclusions, and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED April 6, 2020.

_____
LEE ANN RENO
UNITED STATES MAGISTRATE JUDGE

### * <u>NOTICE OF RIGHT TO OBJECT</u> *

Any party may object to these proposed findings, conclusions, and recommendation. In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E). *Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed* as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Findings, Conclusions, and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge and accepted by the district court. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1), *as recognized in ACS Recovery Servs., Inc. v. Griffin*, 676 F.3d 512, 521 n.5 (5th Cir. 2012); *Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir. 1988).